# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW MEXICO

In re:   FUEL 4 LESS, LLC,                                              No. 7-11-15240 JA

Debtor.

## MEMORANDUM OPINION

Before the Court is the Trustee's Motion to Enforce Carveout for General Unsecured Creditors ("Motion") filed by Craig H. Dill, Chapter 7 Trustee ("Trustee").  *See* Docket No. 509. The Motion requests the Court to enforce an order that provides for distribution of certain settlement proceeds to "general unsecured creditors."  *See* Stipulation and Agreed Order between Virtual Reality Enterprises, LLC and the Committee of Unsecured Creditors of Fuel 4 Less, LLC Resolving and Dismissing Complaint ("Agreed Order") – Adversary Proceeding No. 12-1203, Docket No. 7.  The State of New Mexico Taxation and Revenue Department ("NMTR") objected to the Motion, asserting that it did not receive proper notice that the distributions to creditors under the Agreed Order would disregard the Bankruptcy Code's distribution scheme.  *See* Taxation and Revenue Department's Objection to Trustee's Motion to Enforce Carveout ("Objection") – Docket No. 514.

As the holder of a priority, unsecured claim, NMTR contends that it is entitled to receive all of the remaining settlement proceeds.  The Trustee counters that the Agreed Order provides for a distribution to NMTR only on a pro rata basis with other allowed unsecured claims. Because the Court finds that the language in the Agreed Order does not clearly provide for a distribution to unsecured, nonpriority creditors contrary to the distribution scheme under the Bankruptcy Code, the Court will deny the Motion.

FACTS AND PROCEDURAL HISTORY

Fuel 4 Less, LLC ("Fuel 4 Less" or "Debtor"), acting through Convenience Management Services, Inc., solely in its capacity as State Court Appointed Receiver of Fuel 4 Less, filed a voluntary petition under Chapter 11 of the Bankruptcy Code on December 7, 2011. *See* Docket No. 1. On January 6, 2012, the Court approved the final appointment of Craig Dill as the Chapter 11 Trustee, effective December 14, 2011. *See* Docket No. 93.[1] The United States Trustee appointed a committee of unsecured creditors ("UCC") on March 29, 2012. *See* Docket No. 203.

In June of 2012, the UCC filed a Complaint for Fraudulent Transfer ("Complaint") against Virtual Reality Enterprises, LLC ("VRE") and Sean Curtis, commencing Adversary Proceeding No. 12-1203 (the "Adversary Proceeding"). The UCC alleged that certain loan transactions between the Debtor, VRE, and Sean Curtis were avoidable fraudulent transfers under the Bankruptcy Code and applicable New Mexico law. *See* Adversary Proceeding – Docket No. 1. In October of 2012, the UCC and VRE reached an agreement to settle the Adversary Proceeding. The UCC filed a motion in the Debtor's bankruptcy case pursuant to Fed. R. Bankr. P. 9019(a) seeking to approve the settlement. *See* Committee of Unsecured Creditors' Motion to Approve Settlement of Adversary Proceeding ("Motion to Approve Settlement") – Docket No. 381. The Motion to Approve Settlement represented that the settlement,

> is in the best interests of Debtor's estate because: (1) it is likely that it will result in an increase of assets to pay unsecured creditors; (2) it will reduce administrative expenses associated with participating in the Adversary Proceeding, thus saving money for the

---

[1] The Court entered an order directing the appointment of a Chapter 11 Trustee on an interim basis on December 14, 2011. *See* Docket No. 37. Four days later, on December 19, 2011, Craig Dill was appointed interim Chapter 11 Trustee. *See* Docket No. 63.

estate and creditors; (3) it resolves all questions relating to the application and disbursement of the moneys relating to the Settlement, thus saving further administrative expenses potentially incurred upon award of a judgment if the Adversary proceeding were not settled, and (4) the outcome of the Adversary Proceeding, if prosecuted, is not certain, and the Settlement yields a greater recovery to the estate than if FNM [Finance New Mexico Investor Series II LLC][2] prevailed in the Adversary Proceeding.

Motion to Approve Settlement, ¶ 9.

The UCC attached a copy of the proposed Agreed Order to the Motion to Approve Settlement.

On October 11, 2012, the UCC sent a Notice of Deadline to Object to Committee of Unsecured Creditors' Motion to Approve Settlement of Adversary Proceeding ("Notice") to all persons on the mailing matrix for the Debtor's bankruptcy case. *See* Docket No. 382. The Notice stated, in part, that the Motion to Approve Settlement Agreement requests the Court's approval of a settlement of the Adversary Proceeding pursuant to which "VRE . . . will pay sixty thousand dollars ($60,000) . . . to the Trustee for the benefit of the Unsecured Creditors Committee and its counsel." *Id.* The Notice also stated that a complete copy of the Agreed Order is attached to the Motion to Approve Settlement Agreement.

No party in interest objected to the Motion to Approve Settlement, and, on November 9, 2012, the Court entered an order in the Debtor's bankruptcy case approving the Motion to Approve Settlement. *See* Order Granting Committee of Unsecured Creditors' Motion to Approve Settlement of Adversary Proceeding ("Order Approving Settlement") – Docket No. 385. The Court entered the Agreed Order in the Adversary Proceeding on November 26, 2012. *See* Adversary Proceeding – Docket No. 7. The Agreed Order provides, in part:

> Within ten (10) business days after entry of this Order, VRE will tender payment to the Trustee in a mutually agreeable form in the amount of Sixty Thousand Dollars and Zero Cents ($60,000.00), with such Settlement Payment to be used for: (i) payment of any allowed legal fees to the Committee's counsel in excess of the $40,000 cap previously

---

[2] FNM is one of the lenders in the series of transactions at issue in the Adversary Proceeding. *See* Complaint, ¶¶ 11 and 13.

3

agreed to, and funded, by VRE; and (ii) distributions to the general unsecured creditors of the Debtor's estate.

Agreed Order, Paragraph (A).

The language of the Notice does not match the language in the Agreed Order. Unlike the Notice, the Agreed Order provides for distribution of the $60,000 settlement payment to "general unsecured creditors of the Debtor's estate." *Id.* The Court closed the Adversary Proceeding on November 30, 2012.

On the Trustee's motion to convert the Debtor's case from Chapter 11 to Chapter 7, the Court converted the Debtor's bankruptcy case to Chapter 7 on December 6, 2012. *See* Order Approving Trustee's Motion to Convert Chapter 11 Case to Chapter 7 Pursuant to 11 U.S.C. § 1112(a) – Docket No. 389. The United States Trustee appointed Clarke C. Coll interim Chapter 7 Trustee. *See* Docket No. 390. Mr. Coll resigned, and the United States Trustee appointed Craig Dill as Successor Trustee on December 6, 2012. *See* Docket No. 391.

The Trustee filed the Motion on June 22, 2016. Creditor Southwest Concrete & Paving, Inc. joined in the Motion. *See* Docket No. 513.

## DISCUSSION

NMTR asserts that the Agreed Order does not provide a carve-out for payment of the settlement proceeds to nonpriority unsecured creditors, which would be contrary to the distribution scheme contemplated by the Bankruptcy Code. The Trustee contends that the Agreed Order provides for a distribution to NMTR on its general unsecured claim only on a *pro rata* basis with other allowed, nonpriority unsecured claims. To determine whether the Agreed Order provides for distributions only to nonpriority unsecured creditors, after payment of the UCC's legal fees, the Court must construe the language of the Agreed Order. In doing so, the Court will rely on long-standing rules of construction. *Cf., United States v. ITT Continental*

4

*Baking Co.,* 420 U.S. 223, 236, 95 S.Ct. 926, 934, 43 L.Ed.2d 148 (1975) (observing that, "since consent decrees and orders have many of the attributes of ordinary contracts, they should be construed basically as contracts . . ."); *City of Covington v. Covington Landing Ltd. P'ship,* 71 F.3d 1221, 1227 (6th Cir. 1995) ("An agreed order, like a consent decree, is in the nature of a contract, and the interpretation of its terms presents a question of contract interpretation.").[3]

To discern the meaning of a word or phrase, the Court first considers its plain meaning, and, if the meaning is clear and unambiguous, it is definitive. *See ConocoPhillips Co. v. Lyons,* 2013-NMSC-009, ¶ 23, 299 P.3d 844, 852 (2013) ("'The purpose, meaning[,] and intent of the parties to a contract is to be deduced from the language employed by them; and where such language is not ambiguous, it is conclusive.'") (quoting *Cont'l Potash, Inc. v. Freeport-McMoran, Inc.,* 115 N.M. 690, 704, 8585 P.2d 66, 80 (1993)).[4] But to determine whether an ambiguity exists, the Court is permitted under New Mexico law to consider extrinsic evidence. *See Mark V, Inc. v. Mellekas,* 114 N.M. 778, 781, 845 P.2d 1232m 1235 (1993) (observing that "[t]he court is no longer restricted to the bare words of the agreement in interpreting the intent of the parties to the contract, but may also consider the context in which the agreement was made to

---

[3] *See also, Miller v. United States,* 363 F.3d 999, 1004 (9th Cir. 2004) (likening a confirmed plan to a contract between the debtor and the debtor's creditors, and stating that a confirmed Chapter 11 plan "must be interpreted according to the rules governing the interpretation of contracts.") (citing *Hillis Motors, Inc. v. Haw. Auto Dealers Ass'n,* 997 F.2d 581, 588 (9th Cir. 1993)); *In re Dow Corning Corp.,* 456 F.3d 668, 676 (6th Cir. 2006) (stating that courts use contract principles to interpret a confirmed plan) (citation omitted); *Connolly v. City of Houston (In re Western Integrated Networks, LLC),* 322 B.R. 156, 160 (Bankr. D. Colo. 2005) ("A chapter 11 plan is a contract . . . . [that] must be interpreted according to the general rules for contractual interpretation.") (citations omitted); 46 Am.Jur.2d, *Judgments,* § 74 (2016) ("As a general rule, judgments are to be construed like other written instruments, and the legal effect of a judgment must be declared in light of the literal meaning of the language used.").
   NMTR correctly points out that it is not a party to the Agreed Order. NMTR is, however, bound by the terms of the Agreed Order by virtue of the Order Approving Settlement entered in the Debtor's bankruptcy case after notice and an opportunity to object was given to all persons on the Debtor's mailing list, including NMTR.

[4] *See also, Resolution Trust Corp. v. Ocotillo West Joint Venture,* 840 F.Supp. 1463, 1482 (D.N.M. 1993) ("Under well established tenets of contract law, the terms of a writing are to be given their plain meaning . . .") (citation omitted).

determine whether the party's words are ambiguous[,]" and stating further that "New Mexico law . . . allows the court to consider extrinsic evidence to make a preliminary finding on the question of ambiguity.").

The language at issue in the Agreed Order provides for the distribution of the settlement proceeds first, to the UCC's counsel in payment of its legal fees, and second "to the general unsecured creditors of Debtor's estate." Neither the Bankruptcy Code nor the Bankruptcy Rules recognize the term "*general* unsecured creditors." Rather, the Bankruptcy Code defines "creditor" as an "entity that has a claim," 11 U.S.C. § 101(10), and "claim" as the "right to payment" or the "right to an equitable remedy. . . " 11 U.S.C. § 101(5). Claims are divided into secured claims and unsecured claims. *See, e.g.,* 11 U.S.C. § 506 (referring to "secured claim"); 11 U.S.C. § 726(a)(2) (providing for payment of "any allowed unsecured claim"). Within the category of unsecured claims, there are priority unsecured claims, and nonpriority unsecured claims. *See, e.g.* 11 U.S.C. § 507(a) (establishing the order of priority of unsecured claims); 11 U.S.C. § 1129(a)(9)(C)(iii) (referring to "nonpriority unsecured claim"). Holders of secured claims sometimes are referred to as "secured creditors. *See, e.g.,* 11 U.S.C. § 707 (a)(2)(A)(iii) (regarding calculation of current monthly income and payments contractually due to a "secured creditor"); 11 U.S.C. § 1326(a)(iv) (requiring debtor to provide evidence of current insurance to the "secured creditor"). Holders of priority and nonpriority unsecured claims sometimes are referred to as unsecured creditors. *See, e.g*., 11 U.S.C. § 1325(b)(1)(B) (using the term "unsecured creditors" to refer to the holder of any unsecured claim, whether or not the claim is entitled to priority). *See also* Fed.R.Bankr.P. 3002(a) (with exceptions, requiring an "unsecured creditor" to file a proof of claim).

Because the term "general unsecured creditors" used in the Agreed Order is not defined in the Agreed Order and has no specialized meaning under the Bankruptcy Code, the Court finds that the term "general unsecured creditors" is ambiguous.[5] An ambiguity exists when the language is "reasonably and fairly susceptible of different constructions." *Mark V, Inc. v. Mellekas,* 114 N.M. at 781, 845 P.2d at 1235 (citing *Vickers v. North Am. Land Dev., Inc.,* 94 N.M. 65, 68, 607 P.2d 603, 606 (1980)). *See also, J.R. Simplot v. Chevron Pipeline Co.,* 563 F.3d 1102, 1109 (10th Cir. 2009) ("A contract qualifies as ambiguous if it lends itself to more than one reasonable interpretation because of uncertain meanings of terms, missing terms, or other facial deficiencies.") (applying Utah law) (internal quotation marks and citation omitted). Here, "general unsecured creditors" could mean only creditors with nonpriority unsecured claims. But because "general unsecured creditors" is an imprecise term, it could also reasonably be construed to mean that the remaining proceeds from the settlement would be distributed first to holders of allowed priority unsecured claims and second to holders of allowed nonpriority creditors, as contemplated by the distribution scheme under the Bankruptcy Code. *See* 11 U.S.C. § 507 (fixing the order of priority expenses and claims).[6]

---

[5] The Court recognizes that "general unsecured creditors" is most often used to refer to creditors having nonpriority unsecured claims. *See, e.g., Howard Delivery Service, Inc. v. Zurich Am. Ins. Co.*, 547 U.S. 651, 667, 126 S.Ct. 2105, 2116, 165 L.Ed.2d 110 (2006) (contrasting priority claims with general unsecured claims); Advisory Committee Notes to Fed.R.Bankr.P. 3009 (same). However, the phrase is also sometimes used to refer to creditors having priority or nonpriority unsecured claims. *See Dewsnup v. Timm,* 502 U.S. 410, 422 n.1, 112 S.Ct. 773, 780 n.1, 116 L.Ed.2d 903 (1992) (Justice Scalia dissenting) (referring to avoidance of a lien preserved "for the benefit of the estate" under 11 U.S.C. § 551 as equivalent to "for the benefit of general unsecured creditors").

[6] The Bankruptcy Code provides for distributions of estate assets in Chapter 7 cases as follows:
    (a) Except as provided in section 510 of this title, property of the estate shall be distributed--
        (1) first, in payment of claims of the kind specified in, and in the order specified in, section 507 of this title, proof of which is timely filed under section 501 of this title or tardily filed on or before the earlier of--
            (A) the date that is 10 days after the mailing to creditors of the summary of the trustee's final report; or
            (B) the date on which the trustee commences final distribution under this section;

7

Case 11-15240-j7    Doc 530    Filed 11/30/16    Entered 11/30/16 15:34:07 Page 7 of 10

Use of the term "general unsecured creditors" in the Agreed Order gives no indication that the intended distribution of the remaining settlement proceeds would be contrary to the requirements under the Bankruptcy Code. If a party intends to include a provision in an order providing for distribution to holders of nonpriority unsecured claims on a pro rata basis before distribution to holders of priority unsecured claims, or pro rata distribution on account of unsecured claims regardless of priority, both contrary to the distribution scheme contemplated under the Bankruptcy Code, it should be clear and explicit. *Cf. Miller v. United States,* 363 F.3d 999, 1006 (9th Cir. 2004) (finding that the language in a confirmed plan was "insufficiently clear to warrant overriding the interpretive rule that statutory rights can be waived only by an explicit statement.").

"[T]he purpose of construing ambiguous provisions in a judgment is to give effect to what is already latently in the judgment." *Ridley v. Phillips Petroleum Co.,* 427 F.2d 19, 23 (10th

---

(2) second, in payment of any allowed unsecured claim, other than a claim of a kind specified in paragraph (1), (3), or (4) of this subsection, proof of which is--
    (A) timely filed under section 501(a) of this title;
    (B) timely filed under section 501(b) or 501(c) of this title; or
    (C) tardily filed under section 501(a) of this title, if--
        (i) the creditor that holds such claim did not have notice or actual knowledge of the case in time for timely filing of a proof of such claim under section 501(a) of this title; and
        (ii) proof of such claim is filed in time to permit payment of such claim;
(3) third, in payment of any allowed unsecured claim proof of which is tardily filed under section 501(a) of this title, other than a claim of the kind specified in paragraph (2)(C) of this subsection;
(4) fourth, in payment of any allowed claim, whether secured or unsecured, for any fine, penalty, or forfeiture, or for multiple, exemplary, or punitive damages, arising before the earlier of the order for relief or the appointment of a trustee, to the extent that such fine, penalty, forfeiture, or damages are not compensation for actual pecuniary loss suffered by the holder of such claim;
(5) fifth, in payment of interest at the legal rate from the date of the filing of the petition, on any claim paid under paragraph (1), (2), (3), or (4) of this subsection; and
(6) sixth, to the debtor.

11 U.S.C. § 726(a).

Cir. 1970) (citation omitted). Absent any explicit explanation in the Agreed Order that any remaining settlement proceeds would be disbursed pro rata among all creditors having nonpriority unsecured claims, bypassing priority claims, or among all unsecured creditors regardless of priority, distributions in accordance with the priorities set forth in the Bankruptcy Code is already latently contained in the Agreed Order. Where the interpretation of an ambiguous term could mean distribution of settlement proceeds contrary to the requirements of the Bankruptcy Code, it is appropriate to construe the ambiguity against the drafter. *Cf. Miller,* 363 F.3d at 1006 (finding it appropriate to construe the ambiguous language contained in a plan against the drafter); *In re Lason, Inc.,* 290 B.R. 504, 506 (Bankr. D. Del. 2003) (ambiguous term in confirmed chapter 11 plan construed against the drafter); *Santee v. J & R Mktg. (In re Mako, Inc.,),* 127 B.R. 474, 477 (Bankr. E.D. Okla. 1991) (construing ambiguity contained in Chapter 11 plan confirmed under the 'cramdown' provisions of 11 U.S.C. § 1129(b) against the debtor as the plan's drafter); *Ocotillo West,* 840 F.Supp. at 1482 ("Under well established tenets of contract law . . . ambiguities are to be construed against the drafter.") (citation omitted).

The UCC drafted the Motion to Approve Settlement, drafted and submitted the Agreed Order for the Court's entry, and prepared and served the Notice (which stated only that the settlement would be paid "to the Trustee for the benefit of the Unsecured Creditors Committee and its counsel" and omitted any reference to payment of remaining settlement proceeds to "general unsecured creditors."). Under these circumstances, where neither NMTR nor the Chapter 7 Trustee were parties to the Agreed Order, it is appropriate to construe the ambiguous term in the Agreed Order against the UCC.

The Court, therefore, construes "distributions to the general unsecured creditors of the Debtor's estate" in the Agreed Order to mean distributions to the creditors having priority and

9

nonpriority unsecured claims in accordance with the Bankruptcy Code's distribution scheme. As the holder of a priority unsecured claim, NMTR is entitled to receive a distribution from the remaining proceeds of the settlement before payment to any holders of nonpriority unsecured claims. This construction of the Agreed Order does not adversely affect the Chapter 7 Trustee, who is simply obligated to distribute estate assets in accordance with the Court's ruling, and will earn compensation based on disbursements in accordance with 11 U.S.C. § 326.

Based on the foregoing, the Court will deny the Motion. The Court will enter a separate order consistent with this Memorandum Opinion.

/s/ Robert H. Jacobvitz
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: November 30, 2016

COPY TO:

Chris W. Pierce
Attorney for Chapter 7 Trustee, Craig H. Dill
2632 Mesilla St. NE
Albuquerque, NM 87110

James C Jacobsen
Attorney for Taxation and Revenue Department of the State of New Mexico
111 Lomas NW Ste 300
Albuquerque, NM 87102-2368

Jeffrey A. Dahl
Attorney for Southwest Concrete & Paving, Inc.
PO Box AA
Albuquerque, NM 87103

10